774 So.2d 1186 (2000)
STATE of Louisiana, Appellee,
v.
Calvin ENGLISH, Appellant.
No. 34,164-KA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2000.
*1187 Wilson Rambo, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, William J. Edwards, Assistant District, Attorney, Tommy J. Johnson, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, BROWN and PEATROSS, JJ.
BROWN, J.,
A jury convicted defendant, Calvin English, of one count of armed robbery, a violation of La. R.S. 14:64, rejecting his defense that he was forced to participate in the robbery. Defendant was adjudicated a second felony offender and was sentenced to 49½ years at hard labor without benefit. Defendant now appeals, urging four assignments of error. Finding no error, we affirm.

FACTS
Mack Poindexter lives in a home adjoining the Hosston Motel which he owns and operates on Highway 71 in Hosston, Louisiana. At about 6:00 a.m. on Saturday, July 18, 1998, Mr. Poindexter awoke and saw two black males standing beside the motel. He said that he "didn't think too much about it" and went back to bed. Mr. Poindexter awoke at about 8:00 a.m. and saw defendant, Calvin English, and his brother, Cedric English, sitting at the foot of the stairway oustide. Mr. Poindexter told the men that they would have to sit somewhere else and the brothers moved to sit at a nearby picnic table while Mr. Poindexter went back into his home.
Not long afterwards, Cedric English appeared at Mr. Poindexter's back door requesting to rent a room. The motel owner declined when Cedric could not provide any identification. Later, Cedric returned alone to the front door and told Mr. Poindexter that he had found an old ID. While defendant stood outside on the edge of the porch, Cedric went into the motel office and Mr. Poindexter shut the door.
When Mr. Poindexter asked Cedric for the ID, Cedric drew a revolver from his pants and pointed it at Mr. Poindexter. Cedric then demanded his car keys. Mr. *1188 Poindexter gave the car keys to Cedric. He stated that Cedric then said something that he did not understand and defendant came into the building through the side door and into the office.
Mr. Poindexter said that defendant did not appear to be frightened or surprised when he came into the office and saw his brother with his gun on Mr. Poindexter. He further testified that defendant never said a word during the entire encounter. Cedric handed Mr. Poindexter's car keys to defendant and told him to start the car. Meanwhile, Cedric demanded money from Mr. Poindexter, who told him that the money was in a book in the drawer. Cedric reached into the drawer and retrieved the book. At this time, defendant came back into the motel office and took the book. As defendant rifled through the book, the money fell out onto the floor. Throughout this encounter, Cedric kept the gun pointed at Mr. Poindexter, who never heard defendant protest what was happening.
After the two men had the money, Cedric pulled out a chair, placed Mr. Poindexter in it and told his brother to tie him up. Defendant tore the phone cord from the wall and tied Poindexter's arms together and then to the chair. He used a sheet to tie Mr. Poindexter's legs to the chair.
Mr. Poindexter testified that during this ordeal, Cedric threatened to shoot him. He also threatened to shoot defendant as defendant tied up Mr. Poindexter because he was moving too slow. Mr. Poindexter said that he did not notice whether defendant was frightened by this remark.
After defendant tied up Mr. Poindexter, Cedric sent his brother back outside to warm up Mr. Poindexter's car. After defendant got into the car, he either honked the horn or made a gesture to Cedric to hurry up. Defendant, driving the car, took off from the motel; Mr. Poindexter said that the car was "spinning."
Mr. Poindexter freed himself from the chair and called 911. Caddo Parish Deputy James Alexander first spotted the car speeding south on Highway 71 toward Shreveport. Deputy Alexander, another deputy, and officers from the Shreveport Police Department (SPD), chased the English brothers south on Highway 71 at speeds over 100 miles per hour. Defendant lost control of the car at the highway's intersection with Old Mooringsport Road and ran into a ditch. A partially loaded revolver was found by the police on the front passenger's seat.
Defendant and Cedric ran through the nearby woods but SPD Officer Kevin Perry apprehended them behind a house. After Perry arrested the brothers and Mirandized them, defendant said that "he was just walking from his aunt's house." Perry testified that the brothers did not seem to be arguing with one another, "they were standing there watching the policemen's actions." Defendant did not ask Officer Perry for help or say that he was in danger from Cedric. CPSO Sergeant Rodger Page transported defendant to the Sheriff's office. Sgt. Page testified that defendant made only two unprompted statements: First, defendant asked the whereabouts of his brother, and second, upon observing their direction of travel, he stated: "This isn't the way to Caddo." Sgt. Page testified that defendant was very calm when he asked about his brother and that he never asked to be kept separated from Cedric or expressed that he might be in danger from his brother.
CPSO investigator Charles Bradford interviewed both defendant and Cedric. Tapes of these interviews were played before the jury. The tape of defendant's interview was presented in the state's initial case and Cedric's tape was played to rebut his testimony.
Defendant told Bradford that he and his brother had gone to Hosston in a vehicle driven by an acquaintance after going to a club in Rodessa. The acquaintance did not follow through on his promise to return and pick the men up, leaving them stranded in Hosston all night.
*1189 Defendant told the investigator that he did not see Cedric threaten Mr. Poindexter with a gun. He said that he thought Mr. Poindexter gave Cedric the keys to his car when Cedric asked for them because the innkeeper was a "drughead" or "dopehead" and had rented the car to Cedric for "a piece or some money or something." Defendant initially stated that he did not know that his brother had a gun, and flatly denied that he tied up Mr. Poindexter or that he took any money from the innkeeper. He denied that he or his brother had any money on them, but then he stated that his brother did have money that morning to pay for the room. Defendant said that Cedric told him that he had "jacked" the car after the two were headed home. He then admitted that he had seen his brother with a gun the night before the robbery. Defendant said that he did not stop for the pursuing officers because he thought that the police wanted the car in front of him. He said that when he realized that the officers were pursuing him, he stopped the car and he and Cedric got out and ran.
Subsequent investigation revealed that defendant's fingerprint was on the book that had contained Mr. Poindexter's money. Police also found a telephone cord with one broken connector and a white sheet in the room where Mr. Poindexter said he was tied up.
On March 22, 1999, Cedric pled guilty to one count of armed robbery and defendant proceeded to trial. Cedric was the only witness called by the defense. Regarding defendant's participation in the crime, Cedric testified:
At the time, my brother, he [sic] ain't know nothing about it, you know. He [sic] sitting out there probably still sleeping, and I'm not paying him no attention at all because I'mI'm trying tojust trying to get out of this predicament I was in. He comes up, knocks on the door. I just said, "Come on in." He turned around and looked around the door. He didn't see me at first. And I said, "Come on in." He comes in, you know, and I just drawed the pistol on him, too. "Say, man, why don't you justjust go over there, stand right there."
"Man, what you [sic] doing?"
I'm like, "Man, just go stand over there. Just go stand over there." He looked me up and down. I said, "Just go stand over there." Looked like he was real surprised. And I don't know what was wrong, but I just told himjust draw [sic] the pistol on him too.
Cedric further said that he "pulled the pistol up on" defendant and forced his brother to tie up Mr. Poindexter with the telephone cord and bed sheet. Cedric said that he did not discuss the robbery with his brother before it occurred. Cedric denied that he pointed the gun at Mr. Poindexter. Cedric said that he wasn't in his "right mind" when he made the statement to Investigator Bradford and that he could not remember much of what he said but he knew that he had not been completely honest. Defendant did not testify.
The trial concluded with the state's rebuttal of Cedric's testimony, through Investigator Bradford, which consisted of playing the tape of Cedric's interview with Bradford. Cedric told Bradford that the brothers arrived in Hosston with one of defendant's friends at about 8:00 p.m. on the night before the robbery. Cedric said that when the two went to a club, he found a gun lying in the street. Cedric said that another club patron had dropped the gun on the ground when police arrived at the club. Around 2:00 a.m., after failing to find a ride home to Shreveport, the brothers got a ride to the Hosston Hotel, but it was closed. They waited on the hotel premises until it opened in the morning so they could get a room. Cedric said that he became angry with Mr. Poindexter because the innkeeper asked for identification before renting the brothers a room. Cedric said that he was also angry about being stuck in Hosston and decided to pull the gun. He explained:

*1190 He [Mr. Poindexter] cooperated, you know what I'm saying. He was [sic] telling me why did it have to be him. I asked him why did it have to be me that drive [sic] in (inaudible) up here and drop me off over here at your motel and don't come [sic] picking me up.... You know what I'm saying? I ain't gonna do nobody [sic] like that.
Cedric also told Investigator Bradford:
Q: Defendant knew what was going on all along, right? He knew what was going down?
A: When he walked in, he knew.
Q: Okay. Hewhat
A: I had told [sic] him before I walked in, I said man, I'm (inaudible) I'm mad, I'm sleepy, I want to go home, I don't like this shit, you know what I'm saying. We can get shit, man, you know what I'm saying. Man, I can't take this no more.
Cedric told the investigator that defendant tied up Mr. Poindexter and that he told his brother "don't hurt the old man."
After hearing this evidence, the jury returned a verdict of guilty as charged by a vote of 10 to 2. Defendant filed a motion for post-verdict judgment of acquittal, which the court denied. The state then filed a habitual offender bill against defendant charging him as a second felony offender. On October 26, 1999, the court heard evidence in that matter. The state introduced certified copies of a June 21, 1995, bill of information charging defendant with armed robbery and the transcript of an October 6, 1995, hearing at which defendant pled guilty to simple robbery and was sentenced to four years at hard labor. The state also introduced fingerprint evidence showing that defendant was the same Calvin English who pled guilty in 1995. The court found that defendant was a second felony offender and ordered a pre-sentence investigation.
On December 14, 1999, the court sentenced the defendant as a second felony offender to 49½ years at hard labor without benefit. On March 10, 2000, the court sentenced Cedric English to eight years at hard labor without benefit. The court gave defendant credit for time served and properly notified him of the prescriptive period for post-conviction relief. Defendant did not file a motion to reconsider sentence.[1]

DISCUSSION

Assignments of Error Nos. One and Two
In these assignments of error, defendant contends the evidence presented was insufficient to support the verdict and that the trial court erred in denying his motion for acquittal, motion to reduce the charge and motion to grant a new trial. Specifically, defendant does not contest that the robbery occurred, but argues that he simply did not commit the charged offense and was involved in the robbery only through force. Defendant contends that at most he may be guilty of accessory after the fact, but clearly not as a principal to an armed robbery.
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct *1191 evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
Defendant was charged with armed robbery, a violation of La. R.S. 14:64. That statute provides, in part:
(A) Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The evidence clearly establishes the commission of an armed robbery. Defendant argues, however, that the state failed to prove that he knew Cedric was going to rob Mr. Poindexter.
La. R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Whether defendant was involved in planning the crime was something the jury could have reasonably concluded from the evidence; however, it was not essential in this case. The state could have proven that defendant was involved in either the planning or execution of the crime. Clearly, the defendant who tied up Mr. Poindexter and took the money from the book, was concerned in the commission or execution of the crime or both.
The jury clearly chose to credit the testimony of Mr. Poindexter over the testimony of defendant's brother. Indeed, Cedric English's statement to police was sharply different from his testimony at trial. Mr. Poindexter testified that Cedric kept the pistol pointed at him the entire time, contrary to Cedric's testimony that he pointed the gun at his brother. Poindexter further said that defendant not only did not appear surprised to see what was happening, but he helped his brother search the book for the money. Poindexter testified that defendant never protested what was happening nor did he say anything during the robbery. Further, the jury also heard defendant's taped statement to the police in which he gave a generally incredible version of events that was inconsistent with the physical evidence in several respects. Defendant drove the getaway car and, like the defendant in State v. Thompson, 33,204 (La.App.2d Cir.03/01/00), 754 So.2d 412, he left the scene at high speed even before being pursued by police.
Other evidence also shows that defendant intended to go along with the robbery and that he was not forced to commit the crime. Although he chose to make a statement, defendant said nothing whatsoever to police about any alleged coercion by his brother. Further, defendant had two opportunities to leave his brother behind after defendant knew that Cedric was committing the robbery; defendant was alone in Mr. Poindexter's car-with the car's keystwice before Cedric left the motel. La. R.S. 14:18 provides, in part:
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
. . .
(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately *1192 carry out the threats if the crime were not committed;....
When defendant was alone in the car, Cedric was not present and defendant could simply have left the scene and the alleged coercion; however, defendant twice chose not to leave.
La. R.S. 14:25 provides, in part:
An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.
Given Mr. Poindexter's testimony that defendant actually participated in searching through the book for money (and the corroborating physical evidence) and that Cedric kept the gun pointed at Mr. Poindexter throughout the encounter, the jury was entitled to reject defendant's assertion that he was merely an accessory after the fact.
These assignments of error are without merit.

Assignments of Error Nos. Three, Four and Five
Defendant argues that the Boykin colloquy of his October 6, 1995, guilty plea to simple robbery was inadequate to support his adjudication as a habitual offender. He further argues that his sentence is excessive and that the trial court failed to comply with La. C.Cr.P. art. 894.1.
Nothing in the record shows that defendant filed any objection to the habitual offender bill or objected to any part of the evidence at the habitual offender hearing. Further, defendant did not come forward with any affirmative evidence as required by State v. Shelton, 621 So.2d 769 (La. 1993), to show some infringement of his rights or procedural irregularity in the taking of his guilty plea to simple robbery. La. R.S. 15:529.1(D)(1)(b) provides:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
In the absence of an objection to the habitual offender bill, Assignment of Error No. Three is not properly before the court for review. State v. Rice, 31,871 (La.App.2d Cir.03/31/99), 736 So.2d 956, writ denied, 99-1314 (La.10/15/99), 748 So.2d 464. Moreover, the transcript of the 1995 guilty plea colloquy demonstrates adequate compliance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
Similarly, the record does not contain a motion to reconsider sentence as required by La. C.Cr.P. art. 881.1. Accordingly, our review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La. App.2d Cir.02/25/98), 707 So.2d 164.
The 49½ year sentence imposed on defendant is the minimum sentence for armed robbery for a second felony offender under La. R.S. 15:529.1. Since the Habitual Offender Law in its entirety is constitutional, minimum sentences it imposes upon recidivists are presumed to be constitutional. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. The determination *1193 of an appropriate minimum sentence by the legislature should be afforded great deference by the judiciary. While the judiciary is not without authority to declare a mandatory minimum sentence under the habitual offender law excessive under the facts of a particular case, this should be done only in those rare instances where there is clear and convincing evidence to rebut the presumption of constitutionality. State v. Johnson, supra. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. There was no such showing in this case.
Defendant also complains that the trial court failed to comply with La.C.Cr.P. art. 894.1. Because the sentence imposed is statutorily prescribed, trial court compliance with La.C.Cr.P. art. 894.1 is not mandated. State v. Johnson, 31,448 (La. App.2d Cir.03/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, ___ U.S. ___, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000). The trial court reviewed the defendant's pre-sentence investigation before imposing sentence and there is no reason to disturb the trial court's sentencing discretion.
These assignments of error are without merit.

CONCLUSION
For the reasons expressed above, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Although defendant requested and obtained permission to file a pro-se brief, he did not do so.