796 So.2d 201 (2001)
STATE of Louisiana, Appellee,
v.
Dennis Wayne JOHNSON, Appellant.
No. 34,902-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2001.
*204 Richard E. Hiller, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, John Ford McWilliams, Jr., J. Thomas Butler, Assistant District Attorneys, Counsel for Appellee.
Before CARAWAY, KOSTELKA and DREW, JJ.
CARAWAY, J.
The defendant was tried by jury and convicted of possession with the intent to distribute a Schedule II Controlled Dangerous Substance, cocaine. Subsequently, the defendant was found to be a second felony offender and was sentenced to serve 15 years imprisonment at hard labor, with 5 years to be served without benefit of probation, parole or suspension of sentence. The defendant appeals his conviction and sentence. Finding defendant's assignments of error without merit, we affirm his conviction and sentence.

Facts
On March 23, 1999, narcotics agents with the Caddo Parish Sheriffs Office participated in a "buy-bust" involving the defendant, Dennis Wayne Johnson ("Johnson"). This operation was based upon information that Sergeant Bill Rehak ("Sergeant Rehak") obtained from a confidential informant ("CI"), who stated that Johnson was distributing cocaine in north Caddo Parish and would be delivering cocaine to the CI's home at about 10:00 p.m. Deputy Glen Cornel ("Deputy Cornel"), Agent Roderick Perry ("Agent Perry"), Agent Michael Gray ("Agent Gray"), and Sergeant Rehak gathered at the CI's home in Belcher and waited inside a bedroom for Johnson to arrive. The officers planned to come out of the bedroom and apprehend Johnson when the CI signaled them by using the code word "scales."
At approximately 10:00 p.m., Johnson and his two companions, Odell Eddins ("Eddins") and Kenneth Curtis Thompkins ("Thompkins"), drove up to the CI's home. Johnson entered the home alone and met with the CI in the living room. When the agents heard the word "scales," they entered the living room with Deputy Cornel positioning himself between Johnson and the door. Deputy Cornel placed his hand on Johnson's shoulder and said, "Sheriffs Office." Deputy Cornel was dressed in black and camouflage, with the word "Sheriff" printed on his shirt, vest and sleeves.
Johnson was able to knock Deputy Cornel against a wall and flee out of the front door toward the vehicle parked outside as Deputy Cornel followed closely behind. The lighting of the area was sufficient for the agents to see what occurred outside. As Johnson ran down the stairs, he yelled "Police! Police!" to Eddins and Thompkins. Deputy Cornel saw Johnson throw a clear cellophane "baggie" (hereinafter referred to as the "Baggie") near the tire of the front end of the driver's side of the Cadillac, the part of the car closest to the CI's home. Deputy Cornel saw the Baggie leave Johnson's hand and land on the ground. The Baggie contained two smaller cellophane Baggies, each of which contained one rock substance which was later determined to be crack cocaine. The crack cocaine had a total approximate *205 weight of 22.47 grams. Deputy Cornel recovered the Baggie from the place he saw it land and handed it to Sergeant Rehak.
The officers pursued Johnson, Thompkins and Eddins and were able to subdue them at the scene around the Cadillac. After some initial resistance from Johnson, Sergeant Rehak and Agent Perry were able to handcuff him. Johnson had $595.00 in his front pants pocket when he was arrested.
Sergeant Rehak advised Johnson of his Miranda rights, including his right to remain silent. Johnson explained to Sergeant Rehak that he ran because he did not want to go to jail. He said his probation officer would find out about his arrest and put a "hold" on him. Johnson then asked if someone else could be charged instead of him, and stated, "Well, I can get you other dealers."
Johnson was charged with possession with the intent to distribute a Schedule II Controlled Dangerous Substance ("CDS"), cocaine, a violation of La. R.S. 40:967. At Johnson's jury trial, the four officers testified regarding the "buy-bust" operation, identifying Johnson as the person who threw the Baggie containing two rocks of cocaine. The state also presented the testimony of a forensic chemist for the North Louisiana Crime Lab, who confirmed that the seized substance was cocaine.
Deputy Cornel further testified that in his normal experience as a narcotics officer, persons buy cocaine for personal use in quantities of one to three and a half grams. At the time of the crime, a gram of cocaine could be purchased in the area for about $100. Sergeant Rehak, who had almost ten years experience in drug enforcement, also testified that someone purchasing cocaine for personal use would purchase no more than one gram. While persons may occasionally purchase an "eight ball," which is approximately 3.5 to 3.7 grams of cocaine, that quantity would be a large amount for personal use.
After hearing all of the evidence, Johnson was convicted as charged by the unanimous verdict of a 12-person jury. Johnson filed a motion for post-conviction judgment of acquittal, or alternatively for a new trial, or alternatively for an order in arrest of judgment, which was denied by the trial court.
Johnson was also charged with being a second felony offender under La. R.S. 15:529.1. Subsequently, defense counsel filed a motion to quash the second felony offender bill, which was likewise denied by the trial court. The trial court adjudicated Johnson as a second felony offender, and sentenced him to serve 15 years imprisonment at hard labor, with 5 years to be served without benefit of probation, parole or suspension of sentence. Johnson filed a motion to reconsider sentence, which was also denied. Johnson prosecutes this appeal, assigning five errors.

Discussion

Insufficiency of Evidence
In this first assignment of error, Johnson argues that the evidence was insufficient to support his conviction. First, he contends that the state did not introduce any evidence that he could throw the Baggie a distance in excess of 40 feet. Secondly, Johnson contends that the Baggie of cocaine discovered near the front tire of the Cadillac could have already been on the ground before he arrived, or that Eddins or Thompkins possibly threw the Baggie on the ground when Johnson ran out of the house shouting "police." Lastly, Johnson asserts that the reliance on the agent's testimony regarding the large amount of cocaine found in the Baggie is not proof of Johnson's specific intent to distribute.
*206 A motion for post-verdict judgment of acquittal raises the question of sufficiency of the evidence and shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. La. C.Cr.P. art. 821(B); State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). The issue of sufficiency of the evidence was properly raised by the defendant's motion for postverdict judgment of acquittal. State v. Thibodeaux, supra. Because the defendant has raised issues on appeal regarding sufficiency of the evidence and one or more trial errors, the sufficiency issue should be determined first. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, supra.; State v. Bosley, supra.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a review court may impinge on the fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022. Absent internal contradictions or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Taylor, 34,096 (La. App.2d Cir.12/15/00), 774 So.2d 379; State v. Gradick, 29,231 (La.App.2d Cir.1/22/97), 687 So.2d 1071; State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
The crime of possession with intent to distribute cocaine requires proof of the following elements to support the defendant's conviction. The prosecutor must show beyond a reasonable doubt that the defendant was in possession of a controlled dangerous substance, i.e., cocaine, with specific intent to distribute same. La. R.S. 40:967; State v. Elzie, 343 So.2d 712 (La.1977); State v. Gene 587 So.2d 18 (La. App. 2d Cir.1991), writ denied, 604 So.2d 993 (La.1992).
When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or the manner in which it was carried was inconsistent with personal use. State v. Greenway, 422 So.2d 1146 (La.1982); State v. Green, 524 So.2d 927 (La.App. 2d Cir.), writ denied, 532 So.2d 129 (La.1988); State v. Johnson, 513 So.2d 832 (La.App. 2d Cir.1987), writ denied, 519 So.2d 124 (La.1988). Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981); State v. Elzie, supra. Factors useful in determining whether the state's circumstantial *207 evidence is sufficient to prove intent to distribute include (1) whether the defendant ever distributed or attempted to distribute cocaine; (2) whether the drug was in a form usually associated with the distribution of cocaine; (3) whether the amount was such to create a presumption of an intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Gene, supra. The intent to distribute can be established based solely on the amount found, only if the quantity of the drug is so large that no other inference is possible. State v. Hearold, supra.; State v. House, supra; State v. Ard, 95-1567 (La.App. 4th Cir.12/27/96), 686 So.2d 1026, writ denied, 98-2285 (La.2/5/99), 737 So.2d 740. The presence of large sums of cash is also considered circumstantial evidence of an intent to distribute. State v. Young, 99-1264 (La.App. 1st Cir.3/31/00), 764 So.2d 998; State v. Jordan, 489 So.2d 994 (La. App. 1st Cir.1986).
In its brief, the state cites State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. In Robertson, the state's expert testified that he had never seen anyone purchase 12 grams of cocaine, worth approximately $1,200 to $2,400 on the street, for personal use only. There was also evidence that the defendant had over $700 in cash on his person when arrested. The supreme court ruled that this evidence gave jurors a rational basis for inferring that the defendant intended to distribute cocaine.
A review of the record reveals that the state proved the crime of possession with intent to distribute cocaine. First, the state proved the defendant's identity by the testimony of all four agents. Secondly, Johnson's possession of the cocaine was proved by direct evidence with the testimony of Deputy Cornel stating that he saw the Baggie leave Johnson's hand and land on the ground, that he recovered the Baggie from that spot, and that he delivered the Baggie to Sergeant Rehak. Deputy Cornel's testimony that Johnson threw an object as he fled the scene was corroborated by the testimony of the other three agents. There were no internal contradictions or irreconcilable conflicts with the physical evidence. Thus, the testimony of Deputy Cornel alone, which was evidently believed by the jury, was sufficient to support the conclusion that Johnson possessed the Baggie. Also, the testimony of the forensic chemist likewise proved that the substance in the Baggie was, in fact, cocaine.
Johnson argued as his defense at trial and to this court that the officers' testimony presents an irreconcilable conflict with the physical evidence, concerning the distance Johnson threw the Baggie. He insists that the officers' testimony is incredible because the distance the Baggie was said to have been thrown was factually impossible. The door through which Johnson exited was at the corner of the CI's house, and beneath the door were three wooden steps down to a narrow concrete walk. Deputy Cornel testified that while Johnson "was on the step or when he first hit the ground," he threw the Baggie toward the front driver's side corner of the Cadillac. Deputy Cornel described the Baggie and the two other baggies inside as "twisted up real tight" and "tied in a knot." Immediately after Johnson made the overhand throw, he turned and Deputy Cornel tripped him. Johnson produced evidence at trial concerning the dimensions of the crime scene including the distance from the corner of the house to the edge of the road which measured 44 feet, 2 inches. *208 The location of the Cadillac was said to be parked at the edge of the grass along the dirt roadway in front of the house. Eddins and Thompkins were standing at the rear of the vehicle away from the place where the Baggie was found.
From the above facts, we do not find that the record exhibits evidence of physical impossibility that is in irreconcilable conflict with the officers' testimony that Johnson threw an object toward the vehicle. Instead, the jury was presented with varying descriptions of the confusion of the officers' pursuit of Johnson out of the house, and Johnson's overhand throw of the Baggie. The jury had various facts to weigh in considering the approximate distance between the place where the automobile could have been parked, whether on the edge of the road or in the grass, and the place where Johnson made the throw. Moreover, as discussed below, the jury could and did make its own physical examination of the size and weight of the Baggie for further determination of whether irreconcilable physical evidence existed. Therefore, considering the evidence in the light most favorable to the state, the physical evidence of the crime scene does not present an irreconcilable conflict with the officers' testimony of the events surrounding their chase of Johnson and his subsequent throw of the Baggie toward the car. The events as described were within the bounds of rationality, and Deputy Cornel's testimony, apparently credited by the jury, establishes proof beyond a reasonable doubt of Johnson's possession of the Baggie of cocaine.
Finally, the trier of fact's finding of Johnson's specific intent to distribute the cocaine was sufficiently supported by circumstantial evidence. The state proved through expert testimony that the large amount of cocaine Johnson carried was inconsistent with personal use. Further supporting the finding of intent to distribute is the accurate and corroborating information the police received from the CI regarding Johnson's delivery of the cocaine at a specified location and time. State v. Butler, 99-1794 (La.5/1/00), 760 So.2d 322. Finally, Johnson's statement to Sergeant Rehak that he could get "other dealers" supported the jury's determination of Johnson's intent to distribute.
The evidence, viewed in the light most favorable to the prosecution, was sufficient to conclude that all of the elements of the crime of possession of cocaine with intent to distribute were proved beyond a reasonable doubt. State v. Hearold, supra; State v. Bosley, supra. This assignment is therefore without merit.

Evidentiary RulingDefendant's Expert Witness
Johnson's expert witness, Forrest Nelson Rayborn ("Rayborn"), was accepted as an expert in civil engineering and land surveying. During Rayborn's testimony, the defense attempted to elicit testimony regarding tests and/or experiments regarding whether a 24 gram item can be thrown approximately 42 feet, but the state objected to the testimony. The objection was argued and ruled upon outside the jury's presence. The state's objection was based upon Rayborn's inability to duplicate the exact circumstances of the crime in any test or experiment, as well as the consequential unreliability of the test or experiment. The trial court sustained the objection and would not allow the testimony, unless the defense could lay a foundation indicating that the test was done under substantially the same conditions as existed at the time of Johnson's arrest. The defense objected to the trial court's ruling, stating that it would be impossible for the defense to replicate the test, because it did not have access to cocaine. The defense made no attempt to *209 lay a foundation and tendered the witness for cross-examination.
On appeal, Johnson argues that when the trial court sustained the state's objection to Rayborn's testimony on this issue, the trial court, in effect, denied Johnson the opportunity to defend himself. He again contends that the state failed to prove that he threw the Baggie some 40 feet.
La. C.E. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
La. C.E. art. 703, regarding bases for opinion testimony, provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
The probative value of an experiment or reconstructed evidence depends in large measure upon the extent to which the reconstructed scene was identical with or similar to that which existed at the time of the incident. State v. Boyer, 406 So.2d 143, 149 (La.1981). While a recreation need not be exact in every detail, the important elements of the test must be identical or very similar to the scene in order to have probative value. State v. Trahan, 576 So.2d 1, 7 (La.1990) (order granting certiorari recalled on rehearing); State v. Smith, 95-1826 (La.App. 1st Cir.9/27/96), 681 So.2d 980, writ denied, 96-2568 (La.3/27/97), 692 So.2d 390.
The trial court is to perform a gate-keeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116 (La.1993); State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503. In considering whether scientific evidence is reliable, the trial court should consider the following factors suggested in Daubert: (1) the testability of the expert's theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community. Daubert, supra; State v. Koon, supra.
A review of the applicable law reveals that the trial court was correct in requiring the defense to establish a foundation to show that the tests performed by its expert were both reliable and relevant, before allowing admission of the expert's opinion into evidence. Although the defense objected to the trial court's ruling, it did not attempt to establish any foundation for admission of the expert's testimony regarding the scientific tests performed. As indicated above, there were factors concerning the place of Johnson's throw and the parking place of the vehicle which did not allow for an accurate recreation. Therefore, this assignment of error lacks merit.

Juror Misconduct
Johnson's post-trial motion alleged juror misconduct. In support of Johnson's juror misconduct allegation, the defense filed into the record an affidavit from Johnson's trial attorney regarding the results of a *210 post-verdict questionnaire mailed to jurors. The results showed, among other things, that certain jurors actually threw or pretended to throw the Baggie of cocaine (S-1A) during deliberations. Johnson argues that such an "experiment" conducted by jurors during deliberation amounted to juror misconduct because the jury considered evidence neither developed nor admitted at trial. Without a hearing on the motion for new trial, the trial court found the Baggie of cocaine properly filed into evidence, and that there is no prohibition against jurors handling items of evidence, citing La.C.Cr.P. art. 793.
The decision on a motion for new trial rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear showing of abuse. State v. Quimby, 419 So.2d 951 (La.1982); State v. Hebert, 443 So.2d 620 (La.App. 3d Cir.1983). The merits of such a motion must be viewed with extreme caution in the interest of preserving the finality of judgments. As a general rule, a motion for new trial will be denied unless injustice has been done. La.C.Cr.P. art. 851; State v. Harris, 597 So.2d 163 (La. App. 2d Cir.1992).
Prior to its 2001 amendment by Act No. 465, La.C.Cr.P. art. 793 provided:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
Our jury shield law contained in the Code of Evidence, Article 606(B), addresses the issue of juror testimony, affidavits or statements, as follows:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. [Emphasis added.]
In State v. Graham, 422 So.2d 123 (La. 1982), the supreme court dealt with a similar situation of alleged juror misconduct. The court, addressing our jury shield law, ruled that "the statute must yield and that our courts are required to take evidence upon well pleaded allegations of prejudicial juror misconduct violating an accused's constitutional right to due process, to confront and cross-examine witnesses or to a trial by a fair and impartial jury and to set aside the verdict and order a new trial upon a showing that a constitutional violation occurred and that a reasonable possibility of prejudice exists." Id. at 131. The court, nevertheless, rejected the defendant's complaint that he was prejudiced when a juror conducted a blood coagulation experiment during deliberations. The Graham court found that the trial court ruled correctly in that it had not been shown that a reasonable possibility of prejudice existed. The court stated:

*211 The problems presented by an experiment conducted by jurors on their own defy precise, systematic analysis. A juror is expected to draw upon his general knowledge and experience in deciding the case, and he is encouraged to participate in full and robust debate and deliberations with his fellows in reaching a verdict. However, he should not consider facts relating to the case unless introduced at trial under constitutional and legal safeguards. State v. Sinegal, 393 So.2d 684 (La.1981). Accordingly, when a juror passes beyond the record evidence in reaching a decision, whether a new trial will be granted depends upon the magnitude of the juror's deviation from his proper role, the degree to which the accused was deprived of the benefits of the constitutional and statutory safeguards, and the likelihood that the impropriety influenced the jury's verdict. All of these elements must be weighed in determining whether there is a reasonable possibility that the defendant's right to a fair trial has been prejudiced.
The jurors' experiment in the present case does not represent a radical departure from our expectations that a juror will employ his own ordinary experience in the deliberations. Any normal human being will experience his share of childhood scrapes, razor nicks, blood test pricks and various other episodes producing practical knowledge of blood coagulation. To say that a juror could not pass a fraction of an inch beyond the record to recall and employ this type of practical knowledge in his deliberations is to ignore centuries of history and the true function of the jury (Citation omitted). Although the juror's experiment in this case cannot be classified as proper conduct, it was performed within the jury room and dealt with a subject well within the experience and practical knowledge of all jurors. As contrasted with other cases, it did not involve jurors conducting tests of matters beyond their normal ken or going outside the jury room to obtain esoteric knowledge or special information pertaining directly to the case.
Id. at 132. (Emphasis added.)
Unlike the Graham case, the trial court did not conduct an evidentiary hearing in this case concerning Johnson's claims of jury misconduct. Nevertheless, from the allegations in the motion for new trial as supported by defense counsel's affidavit, we do not find that a reasonable possibility of prejudice was alleged so as to warrant such hearing. Clearly under La. C.Cr.P. art. 793, it was permissible for the jury to conduct a physical examination of the Baggie of cocaine introduced into evidence at trial during their deliberations. The handling of the Baggie for the assessment of its weight and the tossing of the Baggie do not amount to scientific or technical experimentation so beyond the normal understanding of jurors to warrant a conclusion that the jurors were prejudiced by consideration of evidence adduced outside of the trial. In contrast to the questionable experiment in Graham which was conducted by only five jurors, the alleged handling and testing of the Baggie occurred in this case with all of the jurors present during deliberation in the jury room.
Finding no clear showing of abuse of discretion regarding the trial court's denial of the motion for new trial, its ruling will not be disturbed on appeal. Thus, this assignment of error is without merit.

Habitual Offender Ruling
After Johnson was convicted of possession with intent to distribute cocaine, he was charged by the state as a second felony offender pursuant to La. R.S. *212 15:529.1. Defense counsel filed a motion to quash the second felony offender bill. The motion to quash alleges that Johnson's first felony conviction for possession of cocaine, which resulted from a guilty plea on October 26, 1998, did not fully comply with the provisions of La.C.Cr.P. art. 556.1(E).[1] The guilty plea transcript introduced into evidence shows that Johnson was represented by counsel. The transcript also shows that Johnson was fully advised of his rights to a trial by jury, to confront and cross-examine his accusers, and of his right against self-incrimination. The transcript further shows that Johnson voluntarily waived those rights. The trial court denied the motion to quash, with Johnson maintaining an objection to the adverse ruling. Thereafter, Johnson was adjudicated as a second felony offender, which Johnson now assigns as error.
Louisiana's Habitual Offender Law, La. R.S. 15:529.1(D)(1)(b), provides in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact.... A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis thereof, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), a case predating La.C.Cr.P. art. 556.1, the supreme court explained the burden of proof scheme in habitual offender proceedings:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
In ruling on the same challenge to prior guilty pleas in State v. Bryant, 34,244 (La. App.2d Cir.12/6/00), 775 So.2d 596, this Court stated that "Louisiana courts have *213 not required the state to prove the further elements that defendant raises. Even in the context of a direct challenge to a guilty plea, this Court has stated that the failure to advise a defendant of sentencing exposure does not form part of the core Boykin requirements for taking a plea." Id. at 604 605, citing State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
Under the circumstances of this case, Johnson was subsequently charged under the Habitual Offender Law as a second felony habitual offender.[2] The record shows that the state met its burden of proving the existence of the prior guilty plea by producing the transcript of the Boykin colloquy, and that Johnson was represented by counsel when his plea was taken. Most significantly, the transcript shows that Johnson voluntarily waived his Boykin rights and nothing in the plea colloquy suggests that the plea was involuntary. Jurisprudence prior to the time of the enactment of La.C.Cr.P. art. 556.1(E) indicates that the lack of advice and information to the defendant of enhanced penalties for future offenses does not impact the voluntariness of the plea to the charged offense. Cf., State v. Myers, 503 So.2d 1085 (La.App. 2d Cir.1987) and State v. Anderson, 98-2977 (La.3/19/99), 732 So.2d 517. Likewise, to the extent that Article 556.1(E) may be interpreted so broadly as to require the trial court to inform the defendant of the habitual offender law, the ruling on the application of the article in Guzman indicates that only harmless error results. This assignment of error is therefore meritless.

Motion to Reconsider Sentence
After the trial court adjudicated defendant a second felony offender, Johnson was sentenced to serve 15 years imprisonment at hard labor, with 5 years to be served without benefit of probation, parole or suspension of sentencethe statutory minimum under the habitual offender law. Johnson timely filed a motion to reconsider sentence alleging that his sentence is excessive, and requesting a more lenient sentence. The trial court denied defendant's motion.
On appeal, the defense brief merely states that Johnson's sentence is unconstitutionally excessive, because he was erroneously adjudicated as a second felony habitual offender. Johnson has failed to present any specific arguments regarding compliance with La. C.Cr.P. art. 894.1; therefore, he is relegated to the bare claim of constitutional excessiveness.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). *214 A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
Since the Habitual Offender Law in its entirety is constitutional, the minimum sentences it imposes upon recidivists are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. English, 34,164 (La.App.2d Cir.12/20/00), 774 So.2d 1186. Moreover, this court has afforded great deference to the legislature's determination of an appropriate minimum sentence. State v. Nelson, 34,077 (La.App.2d Cir.12/6/00), 775 So.2d 579; State v. Ruffins, 32,870 (La. App.2d Cir.12/10/99), 748 So.2d 614.
At the time Johnson committed the instant offense, the sentence for conviction of possession of cocaine with intent to distribute was imprisonment at hard labor for not less than 5 years nor more than 30 years, with the first 5 years of the sentence being without benefit of parole, probation or suspension of sentence. La. R.S. 40:967(B)(4)(b). The Habitual Offender Law requires a second felony offender to be sentenced to a term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. Thus, in this case, Johnson's sentence exposure was a sentence of not less than 15 years nor more than 60 years, with the first 5 years to be served without benefit of parole, probation of suspension of sentence. La. R.S. 15:529.1(A)(1)(a).
The defendant's sentence is the statutory minimum sentence and is presumed constitutional. State v. Johnson, supra; State v. English, supra. Moreover, this court should afford great deference to the legislature's determination of an appropriate minimum sentence. State v. Nelson, supra; State v. Ruffins, supra. The record does not support a finding that the defendant's sentence is a purposeless or needless infliction of pain or suffering, nor is it shocking to our sense of justice. The sentence is therefore affirmed.

Conclusion
For the reasons stated herein, the conviction and sentence of Dennis Wayne Johnson are hereby affirmed.
AFFIRMED.
NOTES
[1] In connection with the court's receipt of a guilty plea, La.C.Cr.P. art. 556.1(E) provides that: "In any case where a subsequent offense carries an enhanced penalty, the court shall inform the defendant of the penalties for subsequent offenses."
[2] Johnson's complaint regarding the trial court's failure to inform him of the penalty enhancement provisions of La. R.S. 40:982 is meritless, because the defendant was not charged as a second or subsequent offender under La. R.S. 40:982 in the same bill of information or indictment as the charged offense. State v. Murray, 357 So.2d 1121 (La. 1978); State v. Myers, 99-677 (La.App. 3d Cir.12/8/99), 753 So.2d 898, writ denied, XXXX-XXXX (La.6/23/00), 765 So.2d 1036. Therefore, there was no harm caused by any alleged error in failing to inform the defendant of this possible penalty enhancement provision because it was not, in fact, charged and was therefore inapplicable to him for the present offense. Additionally, Johnson cites no law concerning his argument that neither he nor his counsel signed a "guilty plea form." Therefore, because of his failure to present sufficient argument, we consider the issue abandoned. U.R.C.A. Rule 2-12.4.