448 So.2d 1294 (1984)
STATE of Louisiana
v.
William D. PELT.
No. 82-KA-2335.
Supreme Court of Louisiana.
February 27, 1984.
Rehearing Denied March 23, 1984.
*1295 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W.C. Pegues, III, Dist. Atty., David W. Burton, Asst. Dist. Atty., for plaintiff-appellee.
Herman I. Stewart, Jr., Kay & Stewart Law Firm, David L. Wallace, Evans, Bradley, *1296 Wallace & O'Neal, De Ridder, Ferdinand J. Kleppner, Metairie, for defendant-appellant.
WATSON, Justice.
Defendant, William D. Pelt, was convicted by a six member jury of negligently killing Daniel R. Reynolds and LaVaughn J. Johnson in violation of LSA-R.S. 14:32.[1] Defendant was sentenced to five concurrent years on each charge and has appealed his convictions and sentences, assigning six errors by the trial court.

FACTS
The accident occurred on Sunday, July 19, 1981, while defendant was driving his blue and white pickup truck south on the Singer Highway in Beauregard Parish. There were no direct witnesses, but Mr. and Mrs. Gilbert Perkins had been traveling in the same direction immediately prior to the accident and observed the blue and white pickup go partially off the highway on the right hand side twice, and then completely off the highway on the left hand side of the road. Gilbert Perkins slowed down after observing the erratic path of the blue and white truck and the distance between the two vehicles lengthened. The truck disappeared around a curve to the left. Three or four minutes elapsed between the Gilberts' last sight of the truck and their arrival at the accident scene where they observed a motorcycle and two bodies on the left hand side of the road. The blue and white pickup truck was in a field on the left beyond the motorcycle. According to Mr. Perkins, defendant Pelt appeared to be in shock. According to Mrs. Perkins, he was "staggering". (Tr. 38)
Trooper Edwin A. Larkin, a twenty year veteran of the state police, arrived at the scene at approximately 5:35 P.M. The accident occurred about six miles south of DeRidder on Louisiana Highway 27 at mile post 126.8. A vehicle traveling south would negotiate a left hand curve nine hundred to a thousand feet before reaching the site of the accident. The motorcycle was in the east ditch. The male and female bodies were badly disfigured and showed no signs of life.
The victims, Daniel R. Reynolds and LaVaughn R. Johnson, were both stationed at Fort Polk. He was twenty-one and she was twenty-two. He had a bag of marijuana in one sock. A marijuana smoking device was discovered eight to ten feet from the motorcycle.
The motorcycle had come to rest approximately ten feet east of the blacktopped surface of the highway, and the pickup truck was in a field one hundred and twenty-one feet east of the highway, and a hundred feet south of the motorcycle. The truck left fifty-two feet of skidmarks before it left the blacktop. It rolled over in the field during the last thirty-three feet of travel and landed upright. The debris was in the northbound lane of travel and the east ditch. There was a large oil spot on the east edge of the northbound lane.
Trooper Larkin was obtaining information from the pickup truck when the ambulance driver told Larkin that "[t]his fellow up here wants to talk to you before he leaves." (Tr. 51) Trooper Larkin went over to the ambulance and defendant Pelt repeatedly said "I want to talk to you", (Tr. 51) but did not add anything else. Trooper Larkin had known defendant Pelt for ten to fifteen years. He called Pelt by name and asked: "[d]idn't you see them?" And Pelt replied, "Yes". (Tr. 52) Because of an alcoholic odor, Trooper Larkin asked: "[h]ave you been drinking?" and Pelt replied that he had been drinking. Because he was worried about Pelt's physical condition, Trooper Larkin did not detain him *1297 further, did not give him any Miranda warnings, or a sobriety test. In Trooper Larkin's opinion, Pelt was under the influence of alcohol, because of "[t]he smell of alcohol, he was unsteady on his feet, he weaved, his speech was incoherent" and he kept repeating himself. (Tr. 56) The ambulance attendant had been trying to get Pelt to go to the hospital and Trooper Larkin told Pelt to go on to the hospital and he would talk to him there, whereupon Pelt left with the ambulance.
Trooper Larkin saw Pelt at the Beauregard Memorial Hospital approximately an hour later in one of the emergency rooms. Pelt was given his rights, but he was advised not to answer any of Trooper Larkin's questions and did not do so.
The ambulance driver, George A. Langford, testified that he could smell alcohol on Pelt, that Pelt's eyes were glassy and bloodshot, and that he was swaying back and forth. From his experience as an ambulance driver over a period of five years, he felt that Pelt was intoxicated. Pelt's only apparent injury was a laceration underneath his chin which was bandaged. Langford asked Pelt if he were on any medication and Pelt said he was not. He walked into the hospital without assistance.
Nellene Brown, an LPN at the Beauregard Memorial Hospital, testified that Pelt walked in with the ambulance attendant and immediately asked to make a telephone call. She recorded on the out-patient form that Pelt said he was not on any type of medication. Pelt had the odor of alcohol, but refused twice to take a blood test. After Pelt's phone call a friend arrived, Ms. Barbara Bremner.
Officer Carl Leonard of the DeRidder Police Department went to the Beauregard Memorial Hospital, explained Pelt's rights to him, and asked Pelt if he would submit to a blood test. Ms. Bremner responded: "`Well, just wait a minute'", or "`Let me talk to the lawyer'". (Tr. 128) Pelt refused to take the blood test. Leonard had known Pelt approximately ten years and had been a police officer for over five years. He dealt with intoxicated people on a regular basis. In his opinion, Pelt's odor of alcohol, slurred speech, belligerence and disorientation indicated that Pelt was intoxicated.
Dr. René Dugas, who was working in the emergency room that day, testified that Pelt had an odor of alcohol, "his fine coordination was very poor. His speech was slurred. He was very loud, very obtrusive, and cursed both me and the nurse on initial exam. He did not want treatment. He thought his laceration was very minimal and did not require treatment of any type. I talked to him at length again to convince him that the lesion could bewould heal much quicker if it were closed initially and not left open. He again refused treatment at that time. I questioned him as to the extent of his other injuries to try to ascertain if he had any serious injuries that needed emergency treatment, whether he was in a condition to evaluate his medical state. I was unable to get much information as far as speed of the wreck, what kind of trauma he might have received." (Tr. 138) Dr. Dugas, along with the other witnesses, testified that Pelt showed no remorse or even comprehension about the two deaths. Dr. Dugas said that he has had many contacts with intoxicated people in his emergency practice. In his opinion, Pelt was "very intoxicated". (Tr. 140) Dr. Dugas said that the effects of Demerol could be confused with those of alcohol.
Another doctor, Dr. William F. Krooss, saw Pelt at the latter's request in the emergency room and sutured his lacerated chin. Dr. Krooss recorded on the hospital records his impression that Pelt was inebriated. Pelt seemed completely unconcerned about the other people involved in the accident. Dr. Krooss went to the scene of the accident as acting coroner. In his opinion, both victims died almost instantaneously. The massive injuries were on their left sides. Dr. Krooss testified that the effects of Demerol can resemble intoxication and that Demerol can intensify the effects of alcohol.
Trooper John Blunschi testified as an expert in the field of accident reconstruction *1298 that the impact obviously took place in the northbound lane of travel. In other words, the truck was traveling in a straight line in the wrong lane of traffic and did not swerve into that lane. The initial impact was two to two and a half feet from the eastern edge of the paved surface in the northbound lane.
William LeFevre, a consulting engineer in the field of crash analysis with impressive qualifications, testified as an expert witness in accident reconstruction on behalf of defendant Pelt. In his opinion, the pre-impact speed of the truck was 43.9 miles per hour and that of the motorcycle 56.6 miles per hour. According to his reconstruction, the motorcycle was in the southbound lane of travel, the truck's lane, one second prior to the impact and the Pelt vehicle was in its proper lane of travel.
Ms. Bremner, who testified that she and Pelt had a brother-sister relationship, had taken him to Shreveport on July 17, 1981, where he had reconstructive surgery at Schumpert Hospital to correct disfigurement caused by previous cancer surgery. They returned to DeRidder after the surgery and she had a Demerol prescription filled for Pelt. She stayed with him on July 17 and 18 and observed him take the Demerol regularly, the last time being 11:00 P.M. on July 18. She testified that he was in considerable pain. According to the druggist, there were no warnings on the Demerol bottle against ingesting alcohol. Barbara Bremner was not sure whether she saw Pelt the next morning, the day of the accident, but she did talk to him on the telephone between 2:00 and 3:00 P.M. that Sunday afternoon. He was working at his restaurant, The Oaks. According to Ms. Bremner, Pelt's appearance and speech were altered by the surgery because his mouth area was swollen and bandaged. In her opinion Pelt was not intoxicated in the emergency room, but in a state of shock. He was worried about damage to the surgical area.
The medical records at Schumpert reflect that Pelt was released in ambulatory condition to a friend on July 17, 1981. He was discharged with prescriptions for Demerol and Vibramycin after mouth surgery.
Defendant's investigator, Spencer Duane Baldwin, took the photograph introduced in evidence as Exhibit D-14, and identified the front tire of the motorcycle in that photograph. Baldwin marked the rear portion of the front tire with a red "X". According to Mr. LeFevre, Mr. Baldwin was in error on that point. Although Mr. LeFevre had not seen the motorcycle, he was confident about his testimony. Trooper John Blunschi testified in rebuttal that he had examined the motorcycle and that Baldwin was correct in identifying the rear portion of the front tire.
In denying a new trial, the trial court concluded that there was more than ample evidence to justify the jury's verdict.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in allowing the introduction of Pelt's statement to Trooper Larkin in the absence of any Miranda warnings and argues that the statement was not free and voluntary.
In determining whether a suspect is "in custody for purposes of receiving of Miranda protection, the ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, ___ U.S. ___ at ___, 103 S.Ct. 3517 at 3520, 77 L.Ed.2d 1275 at 1279 (1983) quoting Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). There are significant similarities between Beheler's case and Pelt's. Pelt, like Beheler, initiated the brief conversation. Both had been drinking. Although Beheler's interview took place at the station house, he, like Pelt, was not deprived of his freedom or restricted in any way. Although Trooper Larkin requested that Pelt go to the hospital, there was no element of coercion. The conversation took place in a noncustodial situation. The evidence shows that Pelt's statement was free and voluntary and not induced by *1299 fear, threats, or promises. LSA-R.S. 15:451; State v. Neslo, 433 So.2d 73 (La.,1983); State v. Mitchell, 437 So.2d 264 (La.,1983).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the trial court erred in refusing to allow testimony by Trooper Larkin concerning ticket stubs found on the decedents which indicated that they may have attended a rock concert in Houston, Texas, that weekend.
Relevant evidence is defined in LSA-R.S. 15:441 as follows:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
The relevancy of evidence must be determined by the purpose for which it is offered. LSA-R.S. 15:442.[2] At the time the ticket stubs were offered, during Trooper Larkin's testimony, defendant's attorney argued that the tickets would show that the couple was traveling from Houston and therefore might have been tired and driving in an erratic manner.
The ticket stubs had little or no probative value. It might have been inferred that the decedents had attended the concert. However, attendance at a concert in Houston on Friday or Saturday did not support an inference about their physical condition that Sunday. The ticket stubs had no bearing on the cause of the accident in which they were killed.
The trial court correctly ruled that the ticket stubs were not material or relevant, particularly at the time they were offered in evidence. There was no abuse of discretion. State v. Stramiello, 392 So.2d 425 (La.,1980).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues that the trial court erred in allowing Trooper Blunschi to testify as an expert witness when he was not qualified to do so and his testimony was not based on original investigation.
Trooper Blunschi testified that he had been employed with the Louisiana State Police since July of 1967 and had been involved in accident investigation on a daily basis during that time except for periods of schooling. He has the equivalent of an associate degree in law enforcement from Memphis State University and completed the Louisiana State Police Training Academy in Baton Rouge in 1968. In 1971, he attended Northwestern University of Illinois at Chicago for a year's specialized training in accident investigation and reconstruction, and successfully completed those courses. After his return to Louisiana in 1972, he taught accident reconstruction and accident investigation at the State Police Training Academy in Baton Rouge until 1981. He has qualified to testify as an expert witness in several other criminal cases.
Trooper Blunschi's qualifications were considered in State v. Sherer which stated that "the officer possessed sufficient education and practical experience as an expert in accident reconstruction." 411 So.2d 1050 at 1054 (La.,1982). There was no error in the trial court allowing Trooper Blunschi to testify as an expert.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER FOUR AND FIVE
Defendant contends that the circumstantial evidence of his guilt does not exclude *1300 every reasonable hypothesis of innocence, as required by LSA-R.S. 15:438, and, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have concluded beyond a reasonable doubt that he was guilty. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The evidence of defendant's guilt is extremely convincing.[3] Considering the physical evidence, the Perkins' testimony and Trooper Blunschi's testimony, a rational trier of fact could easily have concluded that the accident occurred when Pelt cut the corner of the left curve into the wrong lane of traffic after weaving drunkenly down the highway.
On the day of the accident, Pelt denied taking any medication; evidence that he had a prescription which he had been taking that Friday and Saturday does not establish that he was taking Demerol when this accident occurred. Even granting that his intoxicated condition resulted from a combination of Demerol and alcohol, rather than alcohol alone, driving in his condition amounted "to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." LSA-R.S. 14:12. There was no evidence that his intoxicated condition was involuntary so as to exempt him from criminal responsibility. LSA-R.S. 14:15(1).
Every reasonable hypothesis of innocence was excluded and, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that defendant was guilty. State v. Parker, 425 So.2d 683 (La.,1982).
These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER SIX
Defendant contends that five years at hard labor on each count is an excessive sentence, because this is his first offense and he received the maximum possible sentence for a single count of negligent homicide.
Defendant was sentenced to concurrent terms of imprisonment which is in line with the provisions of LSA-C.Cr.P. art. 883 when two offenses are based on the same act. However, the trial court could have given Pelt consecutive sentences. State v. Ortego, 382 So.2d 921 (La.,1980), cert. denied 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58; State v. Molinario, 400 So.2d 596 (La.,1981); State v. Farria, 412 So.2d 577 (La.,1982). In addition, the trial court could have fined Pelt up to $5,000 on each charge.
The trial court noted that defendant is forty-one years of age and a substantial business man in DeRidder, a building contractor and the proprietor of the Oaks Restaurant. Defendant has never married and has no dependents. He has had lip cancer, first diagnosed in 1971 and recurring in 1981. A pathology report on December 12, 1981, indicated no evidence of malignancy. The trial court concluded that the problem was not life threatening.
Defendant was involved in an automobile accident in Natchitoches Parish in December, 1964, that resulted in the death of a nine year old child. Although Pelt was charged with negligent homicide, the Natchitoches Parish grand jury returned a no true bill. Even though there was no indictment resulting from that accident, the trial court concluded that it should have made defendant a more careful and concerned driver. On the contrary, defendant has a history of traffic and D.W.I. offenses. He was convicted of driving while intoxicated in Shreveport, Louisiana, on March 16, 1973, and received a fine. On April 23, 1974, defendant was charged in Leesville with driving while intoxicated, but the charge was reduced to careless and reckless operation of a vehicle. He forfeited the bond. On July 17, 1974, defendant *1301 was again charged with driving while intoxicated, this time in DeRidder. He was also charged with driving without a driver's license. He paid another fine. On December 27, 1979, Pelt received a ticket for failing to maintain control of his vehicle, which left the highway and hit another vehicle. He paid a fine. In January of 1980, defendant was again cited for driving while intoxicated. The charge was reduced to careless and reckless operation and Pelt forfeited his bond.
The trial court concluded that Pelt's record, which includes other minor traffic offenses, strongly suggested that he would ultimately cause the type of tragic accident which occurred here. Defendant had had lenient treatment for his past offenses but had not been deterred from drinking and driving. A suspended sentence and probation could not be justified in view of the seriousness of the crime and defendant's past disregard for the dangers of driving under the influence of alcohol. The court concluded that incarceration was necessary to deter future misconduct.
The trial court thoroughly considered all of the mitigating and aggravating factors mandated in LSA-C.Cr.P. art. 894.1 in imposing the sentence. The sentence is not facially excessive in view of defendant's record. It is not grossly disproportionate to the offenses. State v. Sweeney, 443 So.2d 522 (La.,1983).
This assignment lacks merit.
For the foregoing reasons, the convictions and sentences of defendant, William D. Pelt, are affirmed.
AFFIRMED.
DIXON, C.J., concurs, disagreeing with treatment of Assignment of Error No. 3 concerning expert in "accident reconstruction".
DENNIS, J., concurs, disagreeing with the treatment of assignment No. 2 regarding relevancy.
NOTES
[1] LSA-R.S. 14:32 provides:

"Negligent homicide is the killing of a human being by criminal negligence.
"The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
"Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both."
[2] LSA-R.S. 15:442 provides:

"The relevancy of evidence must be determined by the purpose for which it is offered; and when evidence has been excluded when offered for one purpose, but admitted when offered for another, its effect must be restricted to the purpose for which admitted, but no one can be heard to establish a fact for one purpose and deny it for another."
[3] Even if defendant's expert was correct in stating that the accident occurred in defendant's lane of travel, which is unlikely, Pelt's erratic driving immediately before the collision and his intoxicated condition indicate that he negligently caused the deaths of the two victims.