954 So.2d 823 (2007)
STATE of Louisiana, Appellee,
v.
Bernard GRANT, Appellant.
No. 41,745-KA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2007.
Rehearing Denied May 3, 2007.
*827 Louisiana Appellate Project by Annette Fuller Roach, Counsel for Appellant.
Bernard Grant Pro Se.
Paul Joseph Carmouche, Catherine Marion Estopinal, Edwin L. Blewer III, Assistant District Attorneys, Counsel for District Attorney Appellee.
Before BROWN, DREW and SEXTON (Pro Tempore), JJ.
DREW, J.
Bernard Grant was convicted at jury trial for one count of possession of Schedule II CDS with intent to distribute. The trial court sentenced him as a third felony offender to 30 years at hard labor with credit for time served. The defendant now appeals. We affirm in all respects.

FACTS
Agent Chad Denham of the Caddo-Shreveport Narcotics Task Force received *828 information from a certified informant[1] that powder and crack cocaine were being sold from an apartment at 1212 Sprague Street in Shreveport. Based upon this information, Agent Denham instituted surveillance at that address in September 2004.
Agent Denham arranged four separate "controlled buys" of narcotics from this location, in which the certified informant ("C.I.") was given money and equipped with an audio transmitter. In each instance, the C.I. purchased powder cocaine or crack cocaine, all of which was sold in plastic Baggies containing amounts indicative of personal use. The C.I. bought one or two Baggies each time, paying $10 for 0.1 gram of cocaine and $20 for 0.2 gram. From the audio transmissions, agents determined that a person by the name of Terry Gill was selling narcotics from that residence. Gill died before a search warrant was executed upon the premises. Agents were unable to determine the identity of any other voices of those selling narcotics from that address.
Based upon the information obtained through the controlled buys, Agent Denham obtained a search warrant for the residence at 1212 Sprague Street, and a special response team from the task force executed the search warrant on February 2, 2005. In approaching the residence, the team secured three or four people who were standing outside the residence; in so doing, the team found marijuana while searching Timothy Cummings. Before searching the residence, the team rammed down the front door, deployed a distraction device,[2] and rapidly entered the residence in a "stick" formation so that they could quickly secure the residence while the occupants were disoriented. Agent Jeff Peters testified that just before the distraction device was deployed, he saw a black male dressed in all black running from the living room to the back of the residence. Agent Peters, along with Agent Troy Skeesick, secured the bathroom, where they found Bernard Grant and Jackie Bosworth. Agent Peters testified that the defendant was dressed in a black hooded sweatshirt and black pants and that Bosworth was dressed in a tan shirt or jacket. Agent Denham testified that the defendant and Bosworth were the only people in the residence at the time the special response team entered the house, noting that it would have been impossible for others to escape through the back door because it was boarded.
When Agent Peters entered the bathroom, he saw this defendant drop a plastic bag inside a hole in the wall of the bathroom with his left hand. The plastic bag contained nine small clear plastic bags with crack cocaine and five small blue plastic bags with powder cocaine. Grant had $760 on him when he was searched. The search of the bedroom yielded the discovery of more crack cocaine and powder cocaine packaged in a similar manner to the narcotics found inside the bathroom, as well as ecstacy[3] tablets.

DISCUSSION
Sufficiency
Defendant argues that:

*829  the evidence of Agent Peters seeing him in possession of the Baggie for a few seconds, combined with $760 being found on his person was insufficient to support his conviction for possession of cocaine with intent to distribute;
 the circumstantial evidence of his intent to distribute is insufficient to prove this element under the five factors set out by the Louisiana Supreme Court in State v. House, 325 So.2d 222 (La.1975), and its progeny, because it did not exclude every possible hypothesis of innocence;
 Agent Denham was not qualified as an expert witness and that, therefore, it was inappropriate for him to give an expert opinion on the packaging of controlled substances for sale;
 in the alternative, defendant argues that this court should consider the responsive verdict of cocaine possession because the state failed to prove that he had the intent to distribute;
 Agent Denham's testimony about what Agent Peters saw in the bathroom was inadmissible hearsay to which his trial counsel should have objected;
 Agent Peters's testimony was not credible;
 Agent Peters framed him; and
 no rational jury would have convicted him on the evidence presented. The state responds that:
 the evidence was sufficient to sustain this conviction;
 the circumstantial evidence of his intent to distribute was clear;
 defendant waived the claim that Agent Denham was not properly qualified as an expert witness because he failed to raise the claim at trial, but that any such error would have been harmless because the record on appeal shows that he had the expertise to be qualified as such;
 defendant offered no evidence at trial in support of his claim in opening statements that he was at that residence playing cards when officers executed the search warrant;
 the evidence excluded the possibility that defendant was possessing the cocaine for personal use because there was no evidence of crack pipes or other devices to facilitate the use of the crack cocaine; and
 if Grant had bought drugs at the house, then the cash would have been found on Bosworth, instead of the defendant.
Our law on sufficiency is clear.[4]
*830 In order to convict a defendant for possession of a controlled dangerous substance with the intent to distribute, the state must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed the cocaine and that he did so with the intent to distribute it. State v. Moore, 40,311 (La.App.2d Cir.1/13/06), 920 So.2d 334; State v. Clark, 35,272 (La.App.2d Cir.12/05/01), 803 So.2d 280.
We first consider whether there was sufficient evidence that defendant possessed the contraband. This court has previously found that the testimony of an officer who saw the defendant throw a Baggie, which was later recovered and found to contain contraband, was sufficient to show that the defendant had possession of the contraband. State v. Johnson, 34,902 (La.App.2d Cir.9/26/01), 796 So.2d 201, writ denied, 2003-2631 (La.11/08/04), 885 So.2d 1124. Agent Peters testified that he saw the defendant drop a plastic Baggie with his left hand into a hole in the wall of the bathroom. The Baggie recovered from inside the wall, according to the testimony of a forensic chemist, contained cocaine.
Defendant argues that Agent Peters only saw him with one Baggie, but that two Baggies were retrieved from the wall; however, the record does not support this factual assertion.
Defendant also now argues that Bosworth may have handed the plastic Baggie to him to put inside the hole and that he was running away simply to escape the distraction device. However, the record is also devoid of any evidence supporting that argument. On the contrary, Agent Peters's testimony was direct evidence of defendant possessing the contraband. While the defendant attacks the credibility of Agent Peters in his pro se brief and argues that no rational jury could have believed his testimony, the appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Therefore, the state presented sufficient evidence from which a rational jury could easily find that the defendant was in possession of cocaine, a Schedule II controlled dangerous substance.
This court must next consider whether there was evidence of defendant's intent to distribute the contraband. Specific intent may be inferred from the circumstances surrounding the transactions and the actions of the defendant. State v. Allen, 41,548 (La.App.2d Cir.11/15/06), 942 So.2d 1244; State v. Taylor, 24,947 (La. App.2d Cir.6/23/93), 621 So.2d 141, writ denied, 93-2054 (La.2/11/94), 634 So.2d 371. Specific intent may be established solely by circumstantial evidence if every reasonable hypothesis of innocence is excluded. State v. Allen, supra. In State v. Moore, 920 So.2d at 339, this court explained how circumstantial evidence may be used to prove that a defendant possessed the intent to distribute a controlled substance:
When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the *831 state must prove the amount of the substance, and/or the manner in which it was carried was inconsistent with personal use. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute.
The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create an inference of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as Baggies or scales, evidencing an intent to distribute. Testimony of street value and dosage of a drug is also relevant to the issue of intent. (Citations omitted.)
Mere possession of contraband does not amount to evidence of intent to distribute "unless the quantity is so large that no other inference is possible." State v. Hearold, 603 So.2d 731 (La.1992). The presence of large sums of cash is also considered circumstantial evidence of the intent to distribute. State v. Johnson, supra.
In the present case, the plastic bag retrieved from inside the wall after defendant put it there was found to contain nine clear plastic Baggies of crack cocaine and five blue plastic Baggies with powder cocaine, each plastic Baggie containing a single dosage amount. The plastic Baggies retrieved from the wall contained four grams of cocaine. During the controlled buys conducted at that residence before the search, the C.I. bought crack cocaine and powder cocaine packaged the same way. Although agents had no knowledge of this particular defendant selling cocaine from that address before executing the search warrant, Agent Denham testified that there were unidentifiable voices on the audio recording of those controlled buys. There was no evidence of a card game at the residence, in spite of defendant's claim made during opening statements. Agent Denham's testimony regarding the investigation of this residence before the search warrant was executed showed that crack cocaine and powder cocaine were sold from this residence. Upon execution of the search warrant, no evidence of crack pipes or other devices facilitating the personal use of crack cocaine was discovered.
In State v. Hearold, supra, the court found that the circumstances tended to show that the defendant did not intend to distribute the contraband in his possession when the contraband was found in one package, rather than in a number of smaller packages measured in singles doses, due to the absence of weighing scales, plastic Baggies, or other paraphernalia associated with the measuring or packaging of contraband for distribution, and due to the absence of large sums of cash or weapons, which are commonly seized during drug distribution arrests. Conversely, in the present case, the defendant was found in possession of cocaine packaged in several plastic Baggies containing individual doses, paraphernalia of other unused plastic Baggies was recovered at the residence, and a large sum of cash was found on the defendant. Because it was established that powder cocaine and crack cocaine were sold from this residence, the defendant's presence there while possessing cocaine packaged for sale and a large sum of money on his person excludes any reasonable hypothesis of innocence and shows that the manner in which he possessed the cocaine was inconsistent with personal use. Thus, the state presented sufficient evidence *832 from which a rational jury could determine that the defendant had the intent to distribute cocaine. Accordingly, the state presented sufficient evidence to support defendant's conviction for possession of cocaine with intent to distribute, and there is no need to consider the responsive verdict of possession of cocaine.
Improper Expert Testimony
The defendant alleges that Agent Denham was not properly qualified as an expert in order to give an opinion regarding the manner in which the cocaine was packaged, or that the small bags contained individual dosage amounts. Testimony regarding how the cocaine was packaged when it was bought from this residence and how it was recovered during the search warrant are matters of fact and not matters of opinion because Agent Denham was testifying as to how cocaine from this specific residence was packaged and not how cocaine is packaged in general. Testimony regarding whether the individual plastic Baggies contained individual dosage amounts could be considered expert testimony because it requires specialized knowledge that would assist the trier of fact in understanding the evidence. The contemporaneous objection rule precludes the defendant from raising this issue on appeal due to the fact that he did not object to the issue at trial:
Louisiana's contemporaneous objection rule provides generally that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." See State v. Thomas, 427 So.2d 428, 433 (La.1982)(on rehearing) ("The contemporaneous objection rule has two purposes: (1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection.").
State v. Knott, 2005-2252 (La.5/05/06), 928 So.2d 534, 535. The courts recognize an exception to this rule when the error is of such significance that it violates fundamental requirements of due process. State v. Ruffins, 41,033 (La.App.2d Cir.9/20/06), 940 So.2d 45.
Even so, the Louisiana Supreme Court has found that there is no error in allowing a witness to testify as an expert when he has not been qualified to do so when the record shows that the witness possessed sufficient education and practical experience to have been qualified as an expert by the trial court. See State v. Pelt, 448 So.2d 1294 (La.1984), cert. denied, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48. In the present case, Agent Denham testified that he has been a police officer for more than six years, assigned to the Caddo-Shreveport Narcotics Task Force for more than three years, and that he has worked undercover for the task force. Accordingly, the record clearly supports that fact that Agent Denham possessed the requisite specialized knowledge in order to offer an expert opinion regarding the dosage amounts in which cocaine is sold.
Impermissible Hearsay
Defendant also argues in his supplemental pro se brief that Agent Denham's testimony regarding what Agent Peters saw was inadmissible hearsay to which his trial counsel should have objected. As noted above, the failure of trial counsel to object precludes appellate review of the issue. See State v. Knott, supra. Even so, Agent Denham's testimony about Agent Peters seeing defendant drop the plastic Baggie into a hole in the bathroom wall did not constitute inadmissible hearsay. Hearsay is an oral or written assertion, other than the one made by the declarant while testifying at the present *833 trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(A)(1) and (C). Hearsay evidence is excluded because the value of the statement relies on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Zeigler, 40,673 (La.App.2d Cir.1/25/06), 920 So.2d 949. Hearsay evidence may be admissible under the exceptions provided by the Code of Evidence or other legislation, however. La. C.E. art. 802; State v. Zeigler, supra.
One such exception is when an investigating officer testifies concerning events leading to the arrest of a defendant, the statements made to him by others during the course of the investigation are not hearsay if they are not offered for the truth of the matter asserted, but merely to explain the officer's actions. State v. Zeigler, supra. Thus, when the officer does not testify with regard to the substance of what another person told him, but with regard to what he did in response to that information, the testimony is not considered hearsay. State v. Zeigler, supra. Agent Denham testified that he was advised by Agent Peters that he saw defendant throw a package into a hole in the bathroom wall. This statement was then followed by Agent Denham's testimony about how he looked into the hole and personally observed the plastic Baggie, how he observed Agent Peters retrieve it from inside the wall, and then how he processed the evidence retrieved. Because the statement was made to explain his actions, Agent Denham's statement did not constitute inadmissible hearsay.
Further, the erroneous admission of hearsay evidence does not require reversal of the conviction when the error is harmless beyond reasonable doubt. State v. Zeigler, supra. Rather, reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict. State v. Zeigler, supra. In the present case, Agent Peters testified that he saw defendant holding the plastic Baggie in his left hand and then dropping it into a hole in the bathroom wall. Therefore, Agent Denham's testimony regarding Agent Peters seeing defendant with the contraband would not warrant reversal of the conviction, even if it was an erroneous admission of hearsay, because there is no reasonable probability that it contributed to the verdict, in light of Agent Peters's testimony to the same fact.
Admission of Other Drugs
The defendant argues that:
 the court admitted improper evidence of the powder cocaine, crack cocaine, and ecstacy tablets that were found in the bedroom of the apartment, as well as evidence of the second plastic Baggie recovered from the bathroom, because he was not charged with possessing that contraband;
 no evidence was presented connecting him to that residence or that contraband, nor was there substantial evidence regarding who lived there;
 the state failed to file Prieur notice of its intent to present evidence of other crimes;
 this evidence is not admissible for any purpose allowed under the general exclusionary rule;
 this evidence does not qualify as res gestae, or evidence of integral acts, because there is no connection between him and that evidence; and
 he is entitled to a new trial on the lesser included offense of possession of cocaine.
The state responds that:
 defendant waived this argument for appellate review because he made no contemporaneous *834 objection to the admission of the evidence at trial;
 this evidence falls within the res gestae exception to La. C.E. art. 404(B) and, as such, there is no requirement that the state give defendant Prieur notice;
 evidence of the contraband found in the bedroom was res gestae evidence due to the fact that it was giving the jury a more accurate picture of what was found during the search of this residence and, thus, necessary for narrative cohesiveness;
 what was found in the bedroom was not actually evidence of defendant's other crimes because the state presented evidence that Bosworth lived at that residence and that La. C.E. art. 404(B) does not preclude the state from presenting evidence of someone else's other crimes; and
 presentation of the contraband found in the bedroom was relevant for proving that the apartment was used for the distribution of narcotics and that the jury could infer that defendant had an intent to distribute narcotics due to his presence there.
The state accurately notes that this issue was not preserved for appellate review by a contemporaneous objection made at the time of the alleged improper admission of evidence. State v. Taylor, 37,356 (La.App.2d Cir.9/26/03), 855 So.2d 958, writ denied, 03-3141 (La.3/19/04), 869 So.2d 848. Even so, we address the issue at this time in the interest of judicial economy because it is relevant in addressing whether trial counsel was ineffective for failing to object to the admission of this evidence, which was also raised in another assignment of error.
Generally, evidence of other crimes committed by the defendant is inadmissible due to the "substantial risk of grave prejudice to the defendant." State v. Prieur, 277 So.2d 126 (La.1973). Even so, La. C.E. art. 404(B)(1) recognizes that evidence of other crimes, wrongs, or acts of a defendant are admissible as exceptions to the general exclusionary rule when admitted for the purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence or mistake or accident or when the evidence relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. State v. Roberson, 40,809 (La.App.2d Cir.4/19/06), 929 So.2d 789. Admissibility of evidence of these prior acts has been succinctly set forth in State v. Jackson, 93-0424 (La.10/18/93), 625 So.2d 146, and the state is required to do the following when it seeks to present such evidence: (1) comply with the notice requirements and limiting instructions set out in State v. Prieur, supra; (2) prove by clear and convincing evidence that the other act occurred and was committed by the defendant; (3) show that the evidence falls within one of the La. C.E. art. 404(B) exceptions to the general exclusionary rule and that this exception is relevant to the outcome of the case; and (4) show that the probative value of the evidence outweighs its potential prejudicial value. The trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670.
Evidence of integral acts, or res gestae, is admissible under La. C.E. 404(B)(1) without requiring the state to give Prieur notice or the trial court conducting a Prieur hearing. State v. Boyd, 359 So.2d 931 (La.1978); State v. Mandosia, 36,827 (La.App.2d Cir.4/09/03), 842 So.2d 1252. Evidence of integral acts, or *835 res gestae, is admissible so that evidence may be presented in context of the circumstances:
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. (Citations omitted.)
State v. Brewington, 601 So.2d 656, 657 (La.1992). The "res gestae" doctrine includes testimony of witnesses regarding what they heard or observed before, during, or after the commission of the crime, including utterances or declarations, if a continuous chain of events is evident under the circumstances. State v. Lowery, 33,905 (La.App.2d Cir.2/28/01), 781 So.2d 713, writ denied, XXXX-XXXX (La.2/22/02), 809 So.2d 978 (internal citations omitted) (emphasis added). "The test of integral act evidence is not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inference, whatever they may be, necessary to reach an honest verdict." State v. Gaddis, 35,661 (La.App.2d Cir.3/14/03), 839 So.2d 1258, writ denied, 03-1275 (La.5/14/04), 872 So.2d 519, cert. denied 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487.
Defendant asserts that there was a second plastic Baggie found in the bathroom wall; however, the record does not support this factual assertion. Agent Denham testified that contraband found in the bedroom contained powder cocaine and crack cocaine packaged in a similar manner to the contraband retrieved from the bathroom wall. Agent Denham further testified that Bosworth admitted living at the apartment and that he had keys to the apartment on him at the time of his arrest. The evidence of the contraband seized from the bedroom was presented in the context of proving that narcotics had been found in an apartment that were believed to be used for narcotics distribution. While the contraband found in the bedroom was not construed as belonging to the defendant, it did provide for the jury information from which they could further infer that the apartment was a place for drug distribution. Therefore, it was discovered in the continuous chain of events surrounding the discovery of the defendant being in possession of powder cocaine and crack cocaine that had been packaged for sale, and exclusion of this evidence would have deprived the state of presenting its evidence with narrative cohesiveness. The presence of the other contraband, even though not directly linked to the defendant, helped the state prove that this apartment was used in drug distribution and helped the jury draw inferences as to the defendant's intention for being there at that time. Therefore, admission of the contraband found in the bedroom was proper under the integral acts, or res gestae, exception to the general exclusionary rule of La. C.E. art. 404(B).
The defendant argues that the contraband found in the bedroom could not be considered res gestae evidence because it was not tied to him, and the state argues that the contraband from the bedroom is not evidence of his "other crimes," but is evidence of Bosworth's criminal activity. Thus, if the contraband from the bedroom *836 is not actually evidence of defendant's "other crimes," then he is not entitled to the La. C.E. art. 404(B) protection against "other crimes" evidence in relation to that contraband because other circuits have specifically found that "the prohibition against other crimes evidence pertains to other crimes by the defendant, not other crimes of someone else." State v. Buffington, 1997-2423 (La.App. 4th Cir.2/17/99), 731 So.2d 340. The probative value of this evidence far outweighed any prejudice.
Improper Severance
The state originally filed a bill of information jointly charging defendant and Bosworth with possession of Schedule II CDS with intent to distribute; however, the state later filed an amended bill of information charging defendant individually for the same offense.
The defendant argues that:
 severing his trial from that of Bosworth was improper because there was no hearing conducted for the state to explain why it was asking for the severance;
 allowing the state to sever the cases for trial gave it an unfair advantage; and
 he was prejudiced by the severance because a joint trial would have allowed the jury to see the whole picture and hear evidence regarding Bosworth's connection to the apartment and the contraband found in the bedroom.
The state argues that this issue was not properly preserved before this court for appellate review because defendant failed to object to the severance before the trial court. Even so, the state argues that this assignment of error has no merit because the state has the authority to determine how and when it will prosecute a case. In response to defendant's claim of prejudice, the state argues that:
 there was evidence at his trial showing that Bosworth lived at the apartment;
 no effort was made to link defendant to the contraband found in the bedroom; and
 defendant fails to allege how he would have otherwise benefitted from a joint trial with Bosworth.
The defendant's failure to raise an objection regarding the severance to the trial court precludes him from raising this issue on appeal. State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673. Even so, the issue is without merit because La. C. Cr. P. art. 704 states in pertinent part that "[j]ointly indicted defendants shall be tried jointly unless: (1) The state elects to try them separately. . . ." Article 704 only requires the trial court to conduct a hearing on a motion to sever when the defendant moves for the severance. Therefore, the fact that the trial court did not conduct a hearing on the state's motion to sever does not constitute error.
In State v. Lawrence, 40,278 (La.App.2d Cir.3/15/06), 925 So.2d 727, the defendant argued that the state's decision to sever his trial from that of a co-defendant denied him the right to a fair trial and due process. In considering the defendant's claim, this court found no error in the state's action in light of La. C. Cr. P. art. 704 specifically allowing the state to sever the trials of jointly indicted defendants and La. C. Cr. P. art. 61, which provides that, "Subject to the supervision of the attorney general, as provided by Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in the district, and determines whom, when, and how he will prosecute." State v. Lawrence, supra.
Further, defendant's claim that the state had an unfair advantage because a joint trial would have allowed evidence regarding *837 Bosworth's connection to the apartment and contraband in the bedroom is without merit. When asked if any attempts were made to determine who had dominion over the apartment, Agent Denham testified that Bosworth admitted to being the caretaker of the apartment and that he had keys to the residence on this person at the time he was searched. Defendant failed to allege any other source of prejudice by the severance, and La. C. Cr. P. art. 704 clearly gives the state the discretion to try jointly indicted defendants separately without permission from the trial court.
Assertion of Fifth Amendment Privileges by Bosworth and Cummings
Out of the presence of the jury, both Jackie Bosworth and Timothy Cummings appeared before the trial court with their attorneys and stated they did not wish to testify because they were asserting their Fifth Amendment privilege against self-incrimination. Defendant did not object when those witnesses asserted their right to take the Fifth Amendment, but requested that the fact be made known to the jury; however, he did not request a particular manner in which the information should be made known to the jury. After the defendant and state argued this issue, the trial court ruled that it would not allow the defendant to call those witnesses for the purpose of asserting their Fifth Amendment right against self-incrimination before the jury.
The defendant argues that:
 the trial court erred in allowing Jackie Bosworth and Timothy Cummings to assert a blank Fifth Amendment privilege against self-incrimination by refusing to testify;
 he should have been allowed to question them on topics that would not have violated their right against self-incrimination, such as whether or not they lived at that residence and for how long, whether defendant was a frequent visitor to that residence, who lived at that residence, and whether any of them paid bills for that residence or received mail there;
 this would have allowed him to show that he had no connection to the other drugs found in the apartment or to the apartment itself; and
 Bosworth and Cummings could have asserted their Fifth Amendment privilege against self-incrimination on a question-by-question basis if incriminating questions were asked while still allowing him to elicit information helpful to his defense.
The state responds that:
 the failure of an objection to the foregoing at trial precludes him from raising the issue on appeal; and
 the questions that defendant now suggests that he may have asked would have likely been incriminating to those witnesses and, thus, they would have had the right to assert their Fifth Amendment rights in regard to those questions anyway.
The contemporaneous objection rule generally provides that "`[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.'" State v. Knott, supra, quoting State v. Thomas, 427 So.2d 428, 432 (La.1982). Since the defendant did not object to these witnesses' assertion of a blanket Fifth Amendment privilege, the issue is precluded from appellate review.
Even so, there was no error on this issue. When balancing the tension between a witness's Fifth Amendment privilege against self-incrimination and a defendant's Sixth Amendment right to present a defense, the Louisiana Supreme *838 Court has consistently recognized the witness's right not to incriminate himself. State v. Haddad, XXXX-XXXX (La.2/29/00), 767 So.2d 682, cert. denied, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660, citing State v. Brown, 514 So.2d 99 (La.1987), cert. denied 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216. The witness may only do so "in response to questions `where the defendant has reasonable cause to apprehend danger from a direct answer.'" State v. Brown, supra.
The proper method for witnesses to invoke their Fifth Amendment right against self-incrimination is to answer the questions on the witness stand except when it is evident from the implication of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. State v. Brown, supra.
Even so, "a blanket Fifth Amendment privilege is permissible when the witness is charged with participating in the same crime for which the defendant is being tried, and when it is apparent that the inquiry will be devoted to subject matter that would raise in the witness reasonable cause to apprehend danger from a direct answer or an explanation as to why one cannot be given." State v. Bright, XXXX-XXXX (La.04/11/00), 776 So.2d 1134. Further, "[i]t is improper for either side to call a witness, knowing that the witness will assert a privilege, solely to impress upon jurors the fact that the privilege is being claimed." Id., XXXX-XXXX at p. 39, 776 So.2d at 1156.
In the present case, both Jackie Bosworth and Timothy Cummings were arrested at the same time as defendant. Bosworth was apprehended with defendant in the bathroom of the apartment, and both were initially charged in the same bill of information with possession of Schedule II CDS with intent to distribute. Cummings was arrested in the front yard because he had marijuana on his person when the special response team was securing those outside the residence before searching inside. Defendant alleges that Bosworth and Cummings should have been made to testify and assert their Fifth Amendment privilege only when asked questions for which the answers or failure to answer would be self-incriminating; defendant also alleges that this would have permitted him to ask them questions regarding who lived at the apartment and whether defendant was frequently there. Under the circumstances of this case, however, the state was presenting evidence to show that this apartment was frequently used for narcotics distribution in order for the jury to infer that those who were there were involved in narcotics distribution. Thus, questions regarding who lived in and frequented the apartment could very likely be self-incriminating. The trial court did not err in allowing Bosworth and Cummings to assert a blanket Fifth Amendment privilege.
Ineffective Assistance of Counsel
Defendant claims his counsel was deficient by:
 not filing pretrial motions to contest the admissibility at trial of the other drugs found in the residence or to contest the severance of the jointly charged defendants, nor objecting to these actions at trial;
 not objecting to the blanket assertions of Fifth Amendment privileges by Jackie Bosworth or Timothy Cummings;
 not filing the proper post-trial motions to preserve the sufficiency of the evidence issue;
 failing to object to the alleged hearsay testimony of Agent Denham regarding Agent Peters seeing defendant drop a plastic Baggie into a hole in the bathroom wall; and
*839  eliciting information on cross-examination from Agent Denham, who knew defendant before this arrest from another pending case against him.
The state argues that the failure to file a motion for post verdict judgment of acquittal does not preclude the defendant from appellate review of the sufficiency of the evidence. The state also argues that the defendant failed to prove how he was prejudiced by the other alleged errors or otherwise deprived of a fair trial.
At the appellate level, the law on reviewing allegations of ineffective assistance of counsel is well settled.[5]
This court considers claims regarding the sufficiency of evidence even when the defendant fails to file a motion for post verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821. State v. Henson, 38,820 (La.App.2d Cir.9/22/04), 882 So.2d 670. Therefore, trial counsel was not ineffective for failing to file a motion for post verdict judgment of acquittal because this did not preclude the defendant from appellate review regarding the sufficiency of the evidence.
Further, there is no merit to defendant's claim that trial counsel was ineffective for failing to make the proper objections or file the proper motions to *840 preserve for appellate review the alleged errors in Assignments of Error 2-4 or counsel's failure to object to the alleged hearsay. In State v. Allen, 2003-2418 (La.6/29/05), 913 So.2d 788, cert. denied ___ U.S. ___, 126 S.Ct. 2023, 164 L.Ed.2d 787, the Louisiana Supreme Court stated that "the failure to object to a valid error may be the proper subject of a post conviction claim of ineffective assistance of counsel." Conversely, the failure to object to invalid errors may not be the proper subject of a claim of ineffective assistance of counsel. In State v. Leger, XXXX-XXXX (La.7/10/06), 936 So.2d 108, cert. denied ___ U.S. ___, 127 S.Ct. 1279, 167 L.Ed.2d 100, the court found that the failure to object to the admission of a recorded telephone conversation did not constitute ineffective assistance of counsel because there was no legal basis for counsel to contest its admissibility. In State v. King, 41,084 (La. App.2d Cir.6/30/06), 935 So.2d 815, writ denied, 06-1803 (La.2/16/07) 949 So.2d 411, this court found that counsel's failure to object to the trial court's refusal to give a self-defense jury instruction did not constitute ineffective assistance of counsel because exclusion of that jury instruction was harmless error. In State v. Lane, supra, this court found that trial counsel's failure to object to the jury instructions was not ineffective assistance of counsel when the jury instructions were properly given.
Defendant would not have been entitled to relief on any of the previous claims, even if they had been preserved for appellate review. Thus, defense counsel's failure to object was not prejudicial to defendant. Further, defense counsel's failure to object over meritless claims is not ineffective assistance of counsel.
Defendant also alleges that trial counsel was ineffective for eliciting information on cross-examination of Agent Denham that he knew defendant before this arrest due to another pending case against him. Defendant alleged that this was impermissible and prejudicial evidence of other crimes. In support of this argument, defendant first cites counsel's opening statement, wherein counsel stated that "Agent Denham recognized Bernard Grant from an encounter of several, several months prior to that." The context of the opening statement in which counsel said this, however, indicates that counsel was trying to communicate to the jury his argument that law enforcement was unfairly harassing defendant during the execution of the search warrant. Later during direct examination, Agent Denham referred to defendant as "Bernard Cummings" instead of "Bernard Grant." At this point, defense counsel objected that there was no foundation about an alias, and the trial court heard arguments about whether testimony that defendant was known by different names was prejudicial. The state explained that it wanted the jury to know that defendant was known by both names for the purpose of explaining why the name "Bernard Cummings" was listed on an investigation document and to prove identity.
During cross-examination of Agent Denham, this exchange took place:
DEFENSE COUNSEL: At any time did you have any kind of a confrontation or any discussion with Bernard Grant in the front yard?
AGENT DENHAM: It's possible, yes.
DEFENSE COUNSEL: Well, as a result of that conversation was there some discussion between you and Mr. Grant about what his true name was?
AGENT DENHAM: It's possible, yes. I have had dealings with Mr. Grant before, if that's where you are going?

*841 DEFENSE COUNSEL: What circumstances gave rise to your having dealings with Mr. Grant before?
AGENT DENHAM: It had to do with another case pending against him.
DEFENSE COUNSEL: So you knew Mr. Grant?
AGENT DENHAM: Yes, sir.
It appears from the context of the opening statement that this line of questioning was aimed at showing the harassment Mr. Grant had allegedly suffered. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. See State v. Moore, supra. No evidence was presented as to specific offenses committed by defendant, nor did the state seek to introduce other crimes evidence. We find no prejudice from the oblique reference herein about the other case, certainly not to the extent that it undermines the fairness of his trial or validity of his conviction. In the absence of such prejudice, it must be presumed that counsel was exercising professional judgment.

DECREE
The defendant's conviction and sentence are AFFIRMED.
BROWN, C.J., concurs with written reasons.
BROWN, Chief Judge, Concurring.
I fully agree in the affirmation of this case; however, I find that the language in the opinion concerning the state's burden of proof in a possession with intent to sell case could be misinterpreted. In particular, the statement in the opinion that "When the specific intent to distribute . . . is based on circumstantial evidence, the state must prove the amount of the substance and/or the manner in which it was carried was inconsistent with personal use." Obviously, possession can be shown by direct evidence, but intent is a condition of mind which must be inferred from the circumstances.
The burden of proof of the intent to distribute was clearly set forth in State v. Hearold, 603 So.2d at 735, 736 as follows:

In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. (Emphasis added).
There is no "threshold" requirement for the state to prove that the amount of the substance and/or the manner in which it was carried was "inconsistent with personal use." The relevant inquiry in a possession with intent case is whether, considering all relevant evidence, circumstantial and direct, an intent to distribute has been shown.
In this case, the surrounding circumstances as set out in the opinion easily supports the inference of intent to distribute, even though, the amount standing alone could also be consistent with personal use.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, DREW and SEXTON (Pro Tempore), JJ.
Rehearing denied. Request for en banc consideration also denied.
NOTES
[1] Certified informants are registered with the Shreveport Police Department, have been through a background check, and are given money in exchange for information.
[2] An explosive device which disorients with loud noise and a bright flash of light.
[3] "Ecstacy" is the common name for methylenedioxymethamphetaime, which is a Schedule II CDS.
[4] The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/05/99), 737 So.2d 747. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. State v. Jones, 31,613 (La.App.2d Cir.4/01/99), 733 So.2d 127, writ denied, XXXX-XXXX (La.10/01/99), 748 So.2d 434.

This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90.
[5] Claims of ineffective assistance of counsel are more properly raised in an application for post conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Lane, 40,816 (La.App.2d Cir.4/12/06), 927 So.2d 659, writ denied, XXXX-XXXX (La.12/15/06), 944 So.2d 1283. When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Lane, supra. Therefore, in the interest of judicial economy, these claims of ineffective assistance can be addressed on appeal because the record is sufficient for resolving them.

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. See State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. See Strickland, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. See State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. See Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. See Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/03/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. See Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/03/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1067.